MURRAY v. WILLIAMSON.

(Filed November 10, 1903.)

ASSIGNMENTS FOR THE BENEFIT OF CREDITORS—*Sales—Exemptions—Fraudulent Conveyances.*

> A debtor sold to a creditor goods found to be of the value of $227 in payment of a claim of $240.   Subsequently the debtor made an assignment for the benefit of creditors, reserving his right to exemptions.   In an action by the assignee against the creditor a judgment for the defendant was not error, as the sale was good as between the debtor and creditor, and if plaintiff had been permitted to recover the goods it would merely be for the benefit of the debtor.

ACTION by J. W. Murray against F. L. and J. W. Williamson, heard by Judge *W. R. Allen* and a jury at February Term, 1903, of the Superior Court of ALAMANCE County. From a judgment for the defendants the plaintiff appealed.

*J. A. Long, C. E. McLean* and *King & Kimball,* for the plaintiff.

*W. P. Bynum, Jr.,* and *Parker & Parker,* for the defendants.

MONTGOMERY, J.   D. C. Ligon, who had been merchandising under the firm name of S. E. Ligon & Co., being indebted to the defendants in the sum of about $240, sold and delivered to them his stock of goods with the understanding

that an inventory was to be taken of the goods, and if they should be of greater value than the debt due to the defendants, the surplus should be returned to Ligon. Afterwards, and on the same day, Ligon executed a deed of assignment for the benefit of his creditors generally, the assignee being J. W. Murray, the plaintiff. This action was brought by the plaintiff to recover of the defendants the stock of goods, or their value, delivered to them by Ligon on the grounds, first, that the alleged bill of sale, in fact, a security for debt, notwithstanding it purported to be a bill of sale; and, second, that it was procured from Ligon by undue influence exerted by the defendants. The issues, with the answers to the same, as they appear in the record, are as follows:

"1. Was the execution of the bill of sale, of date November 30, 1900, under which the defendant claims, and the delivery of the goods embraced therein, procured by undue influence?" Answer, "No."

"2. What was the value of the property in said bill of sale at the date thereof?" Answer, "$227.40."

"3. What part in value of the property in said bill of sale were consigned by the defendant?" Answer, "None."

"4. Were S. E. Ligon and D. C. Ligon partners at the time of the execution of the said bill of sale?" Answer, "No."

"5. If not, to whom did the property in said bill of sale belong?" Answer, "D. C. Ligon."

"6. Was the property embraced in the bill of sale delivered to the defendants before the execution of the deed of assignment to the plaintiff?" Answer, "Yes."

"7. Did the defendants agree at the time of the execution of the said bill of sale, and as a part of the consideration for the execution thereof, that after the payment of the debt due them from the property in the bill of sale they would return

any balance to the makers of the bill of sale?" Answer, "Yes."

"8. What amount, if any, was due defendants at the time of the execution of the bill of sale?" Answer, "$242.29."

Upon the verdict his Honor gave judgment in favor of the defendants, and against the plaintiff for costs. We see no error in the judgment. There is no necessity for us to go into a discussion of the legal effect of the bill of sale taken in connection with the promise of the defendants to return any surplus after the payment of the debt due to the defendants. The value of the goods as found by the jury was only $227.40, while the defendants' claim was $240. The debtor, Ligon, reserved his personal property exemption in the deed of assignment, and for whose good would it be if the plaintiff should recover the goods in this action? Surely not for the creditors'. The debtor only would be benefited. The sale of the goods to the defendants was good at least between the parties; and it would be a vain thing to order the goods to be delivered to the plaintiff and for him in turn to deliver them to Ligon.

No error.